BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
NATALIE K. WIGHT
United States Attorney
JAMES G. TOUHEY, Jr.
Director, Torts Branch
EMILY M. KELLEY, D.C. Bar No. 1016906
Trial Attorney
KRISTIN MCGRORY, Maryland Bar No. 0512140251
Trial Attorney
SARAH DU, Maryland Bar No. 2012170214
Trial Attorney
U.S. Department of Justice
Civil Division, Torts Branch
P.O. Box 888
Benjamin Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-4206
Facsimile:  (202) 616-5200
E-mail:  Kristin.B.McGrory@usdoj.gov
*Attorneys for Defendant United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| ELLEN URBANI, et al., | Case No. 3:23-cv-1920-AN |
| Plaintiffs, | |
| v. | **DEFENDANT UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF MOTION TO DISMISS** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## INTRODUCTION

Defendant United States' motion to dismiss demonstrated that Plaintiffs' claims should be dismissed because the Court lacks subject matter jurisdiction over them and Plaintiffs have failed to state a plausible claim for relief.[1]  Specifically, Defendant established: (1) Plaintiffs' negligence claims are almost entirely premised on factual allegations of intentional conduct, but Oregon law does not recognize a tort for intentional negligence; (2) Plaintiffs' negligent training claims are barred by the discretionary function exception; (3) Plaintiffs fail to state a claim for negligence because they do not allege either an actionable duty to warn or that a breach of such duty caused their alleged injuries; (4) Plaintiffs lack standing to pursue claims based on use of pepper spray and false arrest; and (5) Plaintiffs' battery claims are barred by the intentional tort exception and, with the exception of Plaintiff Maher's allegation that she was "beaten" by a baton, Plaintiffs also fail to state a claim for battery under Oregon law because they fail to adequately plead an intent to injure.[2]  *See* Motion to Dismiss, ECF No. 10.

Plaintiffs' opposition fails to adequately address the deficiencies of the Complaint.  Thus, the Court should dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] While a plaintiff's failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) does not usually deprive a federal court of subject matter jurisdiction, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback v. King*, 141 S. Ct. 740, 749 (2021).  Thus, if a plaintiff fails to plausibly allege the elements of an FTCA claim under 28 U.S.C. § 1346(b)(1), it constitutes both a failure to state a claim under Rule 12(b)(6) and deprives the court of subject matter jurisdiction over the claim. *Id.*

[2] Although Plaintiffs bring their claims on behalf of a putative class, no class has been certified.  Accordingly, where Defendant refers to Plaintiffs herein, it refers to the individually identified Plaintiffs in this case and not any purported class of unidentified Plaintiffs.  *See Lindsay v. GEICO*, 448 F.3d 416, 420 (D.C. Cir. 2006) (noting that "subject matter jurisdiction is a prerequisite to class certification" under Rule 23).

DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS - 1

## ARGUMENT

I. **PLAINTIFFS' NEGLIGENCE CLAIMS SHOULD BE DISMISSED.**

A. **Pleading in the Alternative Still Requires a Plausible Claim for Relief, which Intentional Negligence Is Not.**

Defendant established in its motion that Plaintiffs have not sufficiently stated a claim for negligence because their claim is premised on allegations of intentional conduct and Oregon law does not recognize a claim for intentional negligence. Motion to Dismiss, ECF No. 10 at 6–11. In response, Plaintiffs contend they can plead negligence and battery in the alternative. Opposition, ECF No. 17 at 12–18. Defendant acknowledged in its motion that alternative pleading is generally permitted. Motion to Dismiss, ECF No. 10 at 11 n.5. But Defendant explained that the ability to plead in the alternative does not relieve Plaintiffs of their burden to plausibly allege distinct factual allegations to support a claim for negligence. Motion to Dismiss, ECF No. 10 at 11 n.5 (citing cases). It is that burden which Plaintiffs have failed to carry. *See* 5 Fed. Prac. & Proc. Civ. § 1284 (4th ed.) (Wright & Miller) ("If the court determines that one of a plaintiff's alternative claims lacks merit, it may deny relief on that claim."). Plaintiffs describe intentional actions during the protests in Portland in July 2020: "using tear gas without justification," "shooting pepper-spray balls indiscriminately or directly," "spraying pepper spray for the purpose of inhibiting protestors' ability to see," "beating of persons with batons," "arresting protestors without probable cause," "exploding or detonating grenades," and "applying [] force." *See* Opposition, ECF No. 17 at 9–10. But they fail to set forth distinct factual allegations to plausibly support their negligence—rather than battery—claims. *See* Motion to Dismiss, ECF No. 10 at 8–9.

Plaintiffs do not refute the cases cited by Defendant, all of which post-date the adoption of Ore. R. Civ. P. 16 in 1978,[3] in which courts in this district have dismissed intentional negligence claims at the motion to dismiss stage. *Id.* at 9–10. Those cases held that allegations of intentional conduct—such as the seizure of a person or the making of an arrest—cannot support a plausible claim for negligence and thus should be dismissed as a matter of law. *Stade v. Or. Dep't of Hum. Servs.*, No. 3:21-cv-01217-JR, 2022 WL 2995126, at *1, 7 (D. Or. May 16, 2022) (adopted by *Stade v. Or. Dep't of Hum. Servs.*, No. 3:21-cv-01217-JR, 2022 WL 2984184 (D. Or. July 28, 2022)) (dismissing negligence claim because "allegations of intentional conduct do not support a claim for negligence"); *Wani v. Croy*, No. 3:17-cv-01192-YY, 2017 WL 7360373, at *2 (D. Or. Dec. 13, 2017) (claim for intentional negligence "should be dismissed as frivolous") (adopted by *Wani v. Croy*, No. 3:17-cv-01192-YY, 2018 WL 700794 (D. Or. Feb. 2, 2018)); *Hartman v. Brady*, No. 3:15-cv-1753-AC, 2016 WL 6126962, at *5 (D. Or. Sept. 19, 2016) (dismissing negligence claim premised on same factual allegations as constitutional claim) (adopted by *Hartman v. Brady*, No. 3:15-cv-1753-AC, 2016 WL 6090925 (D. Or. Oct. 18, 2016)). Because the factual allegations Plaintiffs plead in support of their negligence claims center on intentional conduct, *see* Complaint, ECF No. 1 at ¶¶ 7, 14, 22, 24, 29–30, 46–49, 54–56, here—as in *Stade*, *Wani*, and *Hartman*—Plaintiffs' negligence claims should be dismissed as a matter of law.[4]

---

[3] But, in any case, Plaintiffs' observation that *Cook v. Kinzua Pine Mills Co.*, 207 Or. 34 (1956) and *Denton v. Arnstein*, 197 Or. 28 (1952) pre-date Oregon Rule of Civil Procedure 16 is irrelevant. The Federal Rules of Civil Procedure apply in FTCA suits, and the post-1978 cases from this district cited by Defendant also rejected claims for intentional negligence, despite the fact that Fed. R. Civ. P. 8 allows for alternative pleading.

[4] Plaintiffs argue that Defendant "relies primarily" on *Cook* and *Denton* to support its argument. Opposition, ECF No. 17 at 13. But Defendant simply cited *Cook* for the definition

**B.      Plaintiffs' Claims for Negligent Training Are Precluded by the Discretionary Function Exception.**

As demonstrated in Defendant's motion, Plaintiffs' negligent training claims should be dismissed because they are not facially outside of the discretionary function exception.  *See Prescott v. United States*, 973 F.2d 696, 702 n.4 (9th Cir. 1992) (stating plaintiff "must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss."); *see also Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000) ("This court and others have held that decisions relating to the hiring, training, and supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield."); *Nurse v. United States*, 226 F.3d 996, 1001–02 (9th Cir. 2000) (supervision and training of federal border and customs agents "fall squarely within the discretionary function exception").  Notably, Plaintiffs fail to allege any mandatory statute, regulation, or established agency policy that prescribed a specific course to be followed for training federal law enforcement officers in Portland in July 2020.  Moreover, Plaintiffs fail to allege any facts to overcome the presumption that training of federal law enforcement officers is the kind of policy-based, discretionary conduct that the exception was designed to shield.  *See* Motion to Dismiss, ECF No. 10 at 13–15.

Plaintiffs acknowledge that, under the first prong of the discretionary function exception test, they must allege a mandatory "federal statute, regulation, or policy [that] specifically [pr]escribes a course of action for [the federal] employee to follow" to plausibly allege a claim outside of the exception.  *See* Opposition, ECF No. 17 at 19 (quoting *United States v. Gaubert*,

---

and elements of a battery claim under Oregon law.  *See* Motion to Dismiss, ECF No. 10 at 7, 25. Moreover, Plaintiffs argue that *Cook*, *Denton*, and *Kasnick v. Cooke*, 116 Or. App. 580 (1992) are distinguishable based on their procedural postures.  *See generally* Opposition, ECF No. 17 at 13–17.  However, Defendant relied on those cases for the basic legal proposition that Oregon law does not recognize a claim for intentional negligence.

499 U.S. 315, 322 (1991)).  Yet Plaintiffs fail to do so.  *See id.* at 19–20.  Instead, Plaintiffs state

that Paragraph 24 of the Complaint alleged that "relevant Attorney General guidelines"

concerning the exercise of law enforcement authorities by Department of Homeland Security

("DHS") officers "requir[ed] officers to complete basic law enforcement or criminal

investigatory training, prior to exercising authorities under 40 U.S.C. § 1315." *Id.* at 19.  But, in

fact, the Complaint contains *no* allegations regarding "relevant Attorney General guidelines."

Similarly, Plaintiffs point to a "memorandum" issued by Federal Protective Service ("FPS")

officials discussing the cross-designation of certain DHS officers. *Id.* at 19–20.  But the

Complaint is devoid of any allegations regarding such memorandum.  Thus, Plaintiffs have

failed to carry their burden to identify the specific directive that Defendant's conduct violated.

*See Starrett v. United States*, 847 F.2d 539, 541 (9th Cir. 1988) (plaintiff must plead the specific

mandatory regulation that the government violated to overcome discretionary function

exception).

At most, the Complaint contains a footnote citation to a DHS Office of Inspector General

("OIG") Report, and that report in turn mentions the Attorney General guidelines and FPS

memorandum.  *See* Complaint, ECF No. 1 ¶ 23 n.3.[5]  The DHS OIG Report is not a federal

statute, regulation, or established agency policy that itself sets forth mandatory and specific

directives to overcome the discretionary function exception.  Nor is the OIG Report's reference

---

[5] As a threshold matter, the DHS OIG Report is not incorporated by reference into the
Complaint because merely mentioning the existence of a document in a footnote does not satisfy
the incorporation by refence standard.  *See, e.g.*, *Coto Settlement v. Eisenberg,* 593 F.3d 1031,
1038 (9th Cir. 2010) ("[T]he mere mention of the existence of a document is insufficient to
incorporate the contents of a document."); *F.T.C. v. Amazon.com, Inc.,* 71 F.Supp.3d 1158, 1161
(W.D. Wash. 2014) (declining to deem a document incorporated by reference as it was "[o]nly
once . . . tangentially mention[ed]" in the complaint).

to certain language in the Attorney General guidelines or the FPS memorandum—shorn of any context and isolated from the overall text of the documents—enough to establish that either document set forth a specific and mandatory course of training that DHS officers were required, but failed, to follow, let alone one that *caused their purported injuries*. That is particularly the case because courts frequently recognize that "guidance" documents do not set forth mandatory and specific directives. *See Aragon v. United States*, 146 F.3d 819, 824–25 (10th Cir. 1998) (Air Force Manual did not set forth mandatory directives, because it stated that it was only "intended for guidance"); *see also K.W. Thompson Tool Co. v. United States*, 836 F.2d 721, 729 (1st Cir. 1988) (agency manual stating that the "policies and procedures" set forth therein were intended as "guidance" and did not prescribe mandatory directives); *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996) ("[T]he presence of a few, isolated provisions cast in mandatory language does not transform an otherwise suggestive set of guidelines into binding agency regulations."); *Alvarez v. United States*, No. 2:21-cv-09377, 2023 WL 6192710 at *4 (C.D. Cal. 2023) (recognizing that when assessing whether a provision specifically prescribes conduct, "courts have held that mere guidelines are not 'binding' regulations.") (quoting *Sabow*, 93 F.3d at 1453); *United States v. Baldwin*, No. 11-cr-00018 PAB, 2013 WL 5567484, at * 3-4 (D. Colo. 2013) (noting that the Attorney General guidelines expressly state that they exist "for the purpose of internal agency guidance").

Indeed, Plaintiffs' arguments regarding the DHS OIG Report also mischaracterize its contents. Plaintiffs state that federal agents deployed to Portland were "required" to complete basic law enforcement training pursuant to the Attorney General guidelines, *see* Opposition, ECF No. 17 at 19, but ignore that the DHS OIG Report reflects that the OIG reviewed training records and found the federal agents "met basic law enforcement training requirements as outlined in

Attorney General guidelines regarding 40 U.S.C. § 1315." DHS OIG, *DHS Had Authority to Deploy Federal Law Enforcement Officers to Protect Federal Facilities in Portland, Oregon, but Should Ensure Better Planning and Execution in Future Cross-Component Activities* (Apr. 16, 2021) at 9, *available at* https://www.oig.dhs.gov/sites/default/files/assets/2021-04/OIG-21-31-Mar21.pdf. Plaintiffs argue that the majority of DHS law enforcement officers stationed in Portland did not receive riot and crowd control training, implying a violation of a mandatory training requirement. Opposition, ECF No. 17 at 20. But the DHS OIG Report states that "this type of training is *not required* to execute 40 U.S.C. § 1315 authority." DHS OIG Report at 10 (emphasis added). Plaintiffs try to bridge this gap by pointing to the DHS OIG Report's brief discussion of isolated language from the FPS memorandum to support their position, *see* Opposition, ECF No. 17 at 19–20, but the Report does not set forth language from the FPS memorandum that prescribed a specific course of training. *See* DHS OIG Report at 10. Accordingly, Plaintiffs have not carried their burden to identify a specific mandatory directive that was violated.

Finally, Plaintiffs do not address the second prong of the discretionary function exception test. *See* Opposition, ECF No. 17 at 19. As stated in Defendant's motion, when a governmental employee is afforded discretion, it must be presumed that the employee's actions are grounded in policy when exercising that discretion. *Gaubert*, 499 U.S. at 323. The Ninth Circuit has consistently recognized that decisions related to training implicate policy considerations. *See, e.g.*, *Kelly v. United States*, 241 F.3d 755, 763 (9th Cir. 2001) ("This court and others have held that decisions relating to the . . . training . . . of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield.") (quoting *Vickers*, 228 F.3d at 950).

DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS - 7

Accordingly, because Plaintiffs have not plausibly alleged negligent training claims that are facially outside the discretionary function exception, those claims must be dismissed for lack of subject matter jurisdiction.

### C.     Plaintiffs Fail to Plead a Plausible Negligence Claim for Failure to Warn.

Defendant established in its motion that Plaintiffs fail to plausibly plead both foreseeability and causation for their failure to warn claims. Motion to Dismiss, ECF No. 10 at 15–18. In response, Plaintiffs point to several paragraphs in the Complaint to argue that Defendant's alleged failure to warn unreasonably created a foreseeable risk of harm. *Id.* at 21–22.[6] The cited paragraphs, however, fail to adequately plead foreseeability. Paragraph 29 of the Complaint alleges that "federal agents . . . fired tear gas and tossed and launched flashbang grenades . . . *sometimes* without any prior warning." Complaint, ECF No. 1 at ¶ 29 (emphasis added). And Paragraph 50 of the Complaint alleges that Defendant "us[ed] and appl[ied] force against Plaintiffs *and class members* without a *clearly communicated* warning." *Id.* at ¶ 50 (emphasis added). Those allegations—that federal agents *sometimes* failed to warn and federal agents failed to warn *various* people, which may or may not include the named Plaintiffs, *clearly enough*—do not suffice to plead that Defendant's alleged failure to warn foreseeably created a risk of harm to *Plaintiffs*.

Furthermore, Plaintiffs fail to refute Defendant's argument that they have not plausibly alleged the causation element of their failure to warn claims. First, Plaintiffs contend that causation can be based on an omission, as well as action. Opposition, ECF No. 17 at 23–24. But that point is not in dispute, and, in any event, it misses the mark. As Defendant explained, Plaintiffs cannot satisfy the causation plausibility requirement because they have failed to set

---

[6] Plaintiffs concede that they do not allege a claim for negligence based on a "special relationship theory." Opposition, ECF No. 17 at 22.

forth any factual allegations that Defendant's alleged failure to warn caused *their individual injuries*. Motion to Dismiss, ECF No. 10 at 16–18. Second, Plaintiffs ignore the multiple cases cited by Defendant where courts in the Ninth Circuit have dismissed plaintiffs' failure to warn claims at the motion to dismiss stage for lack of causation. *Id.* at 18, 18 n.8 (citing *Stearns*, *Tedder*, and *Jackson*).[7]

In a last attempt to save their failure to warn claims from dismissal, Plaintiffs cite an out-of-circuit case, *A.G. ex rel. Maddox v. Elsevier, Inc.*, to argue that the Court should not apply the plausibility standard to each element of their failure to warn claims, and should instead determine "whether the claim, viewed holistically, is made plausible." *Accord* Opposition, ECF No. 17 at 24; *see generally id.* at 24–25. But the United States Supreme Court has stated that the plausibility requirement "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). And the Ninth Circuit and the District of Oregon demand that *all* elements of a claim—including causation—be adequately pled. *See* Motion to Dismiss, ECF No. 10 at 18 n.8 (citing cases dismissing negligence claims for failure to adequately plead the element of causation); *see also Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997, 1000 (9th Cir. 2014); *Thema v. Intel Corp.*, No. 3:23-CV-00222-IM, 2023 WL 8006191, at *3 (D. Or. Nov. 17, 2023); and *Yarbrough v. Stryker Corp.*, No. 3:20-CV-00506-IM,

---

[7] Instead, Plaintiffs argue that the "primary case" Defendant cited to support its lack of causation contention was *Garrison v. Deschutes Cnty.* 334 Or. 264 (2002), which Plaintiffs assert is distinguishable based on its procedural posture. Opposition, ECF No. 17 at 24. But Defendant cited *Garrison* for the basic legal proposition that a failure to warn claim can only succeed if the presence of a warning would have avoided the plaintiff's injury.

2021 WL 27291, at *2–3 (D. Or. Jan. 4, 2021) (dismissing claims at the pleading stage for failing to adequately plead specific elements of claims).

Finally, "in the unique context of the FTCA, all elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. at 749. Because Plaintiffs are asserting FTCA claims, the Court must find that Plaintiffs have plausibly alleged each element of their claims in order to have subject matter jurisdiction over their claims. As Plaintiffs have failed to plead factual allegations sufficient to support foreseeability or causation, the Court should dismiss their failure to warn claims.

## II.    PLAINTIFFS LACK STANDING FOR CLAIMS BASED ON FALSE ARREST AND USE OF PEPPER STRPAY.

The United States Supreme Court and the Ninth Circuit have held that standing is a threshold jurisdictional requirement. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 102 (1998) (describing whether a plaintiff has standing to sue as a "threshold jurisdictional question" and noting that jurisdictional requirements are "inflexible and without exception") (internal citation omitted); *Brewer v. Lewis*, 989 F.2d 1021, 1025 (9th Cir. 1993) ("Standing is a jurisdictional question that must be addressed at the threshold of any case."); *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 834 (9th Cir. 2023) ("[S]tanding is a threshold jurisdictional requirement."). Moreover, the Ninth Circuit has held that "[s]tanding . . . is a jurisdictional element that must be satisfied prior to class certification." *LaDuke v. Nelson*, 762 F.2d 1318, 1325 (9th Cir. 1985).

Plaintiffs admit that "none of the proposed class representatives was arrested or shot with pepper spray." Opposition, ECF No. 17 at 31. Nevertheless, they argue that they "each allege that they suffered an injury-in-fact from the illegal actions of federal officers" and possess standing to pursue those claims. *Id.* at 32. Defendant does not dispute that Plaintiffs have

standing to pursue claims based on claimed federal misconduct that allegedly caused *their* injuries. But standing is *claim-specific* and demands that Plaintiffs plead facts sufficient for standing for *each* claim. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing *for each claim that they press*.") (emphasis added and internal citation omitted); *Int'l Primate Prot. League v. Adm'rs of Tul. Educ. Fund*, 500 U.S. 72, 77 (1991); *Valley Outdoor, Inc. v. City of Riverside*, 446 F.3d 948, 952 (9th Cir. 2006). "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the *particular plaintiff* is entitled to an adjudication of the *particular claims* asserted." *Int'l Primate Prot. League*, 500 U.S. at 77 (emphasis added and internal citation omitted); *Or. Prescription Drug Monitoring Program v. U.S. Drug Enforcement Admin.*, 860 F.3d 1228, 1233 (9th Cir. 2017) (internal citation omitted). Here, Plaintiffs concede that they were not subject to the use of pepper spray or false arrest. Accordingly, as a matter of law, they do not have standing to press claims based on such conduct.

Plaintiffs' reliance on *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015), does not compel a different result. In *Melendres*, the Ninth Circuit held that in light of the United States Supreme Court's inconsistent guidance for how to deal with dissimilarities between named and unnamed plaintiffs, it was adopting the "class certification" approach, rather than the "standing" approach. *Id.* at 1261–62. Under the "class certification" approach, a court must first determine whether the named plaintiffs have individual standing to bring their own claims. *Id.* If the court finds that such standing exists, then the court addresses during the class certification stage "any issues regarding the relationship between the class representative and the passive class members [,] such as dissimilarity in injuries suffered." *Id.* Plaintiffs argue that, under *Melendres*, because

they have standing to assert claims for some injuries, they necessarily have standing to assert claims for distinct injuries that they did not suffer arising from entirely different alleged conduct unrelated to their claims.

Plaintiffs overread *Melendres*, which is distinguishable. Unlike in the present case, there the same challenged conduct caused the same injury across all class members. The plaintiffs in *Melendres* challenged the defendants' custom, policy, and practice of performing racially discriminatory traffic stops of Latino drivers and passengers. *Id.* at 1258. On appeal, the defendants argued that the named plaintiffs, who were stopped *inside* a saturation patrol, lacked standing to pursue claims on behalf of unnamed class members who were stopped *outside* a saturation patrol. *Id.* at 1259–60. The Ninth Circuit specifically noted that "the district court found *the same challenged practice and constitutional injury* in *and* outside of saturation patrols" and thus the variances between plaintiffs did not implicate a "significantly different set" of operative concerns. *Id.* at 1263–64 (emphases added). Here, in contrast, Plaintiffs Urbani, West, and Maher did not experience pepper spray or arrest *at all* and the variances between an individual who was arrested and/or sprayed at close range with pepper spray implicates a significantly different set of concerns than an individual who was, for example, struck at a distance with a munition or affected by tear gas used to disperse a crowd. Thus, *Melendres* is inapposite.

Finally, although Plaintiffs repeatedly make reference in the Opposition to a "class," they concede that "[s]tanding is a separate issue" from class certification and that "the question of whether a class representative has standing to represent claims of other absent class members . . . is not appropriate for adjudication at this stage." Opposition, ECF No. 17 at 31–32. Defendant demonstrated in its motion that Plaintiffs cannot avoid the question of whether they have

standing to pursue claims based on certain alleged government conduct by purporting to bring claims on behalf of a class.  Motion to Dismiss, ECF No. 10 at 20 n.10.  "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *TransUnion LLC*, 594 U.S. at 431 (2021).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that *they personally* have been injured, *not that injury has been suffered by other, unidentified members of the class* to which they belong and which they purport to represent." *Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 n.20 (1976) and *Warth v. Seldin*, 422 U.S. 490, 502 (1975)) (emphasis added).[8]

## III.     PLAINTIFFS' BATTERY CLAIMS SHOULD BE DISMISSED.

### A.  Plaintiffs Fail to Plead Battery under the FTCA's Law Enforcement Proviso for Intentional Tort Claims.

Plaintiffs acknowledge that their battery claims must be based on the actions of "law enforcement or investigative offers" that are "empowered to execute searches, to seize evidence, or to make arrests for violations of federal law" in order to establish subject matter jurisdiction for a battery claim against the United States.  *See* Opposition, ECF No. 17 at 25–26.  But Plaintiffs fail to point to any well-pleaded factual allegations in the Complaint that would allow one to reasonably infer that federal law enforcement or investigative officers caused their injuries.

---

[8] Contrary to Plaintiffs' contention, Defendant has not sought to prematurely litigate class certification issues.  Rather, Defendant only has argued that Plaintiffs must satisfy the well-established requirement that they have suffered an injury-in-fact from the allegedly wrongful conduct.

First, Plaintiffs argue that the Complaint "makes clear" that "the federal agents whose acts and omissions are the subject of their claims were 'investigative or law enforcement officers' within the meaning of the FTCA." *Id.* at 26. Not so. Rather, all of Plaintiffs' cited allegations are wholly conclusory or do not tie the challenged actions or omissions of federal law enforcement or investigative officers to Plaintiffs' claimed injuries. For example, Plaintiffs cite to general allegations in the Complaint regarding the deployment of federal officers and law enforcement agents to Portland for the protection of federal property. *See id.* at 26. But tellingly, Plaintiffs do not identify any allegations that the acts or omissions of federal law enforcement officers caused Plaintiffs' specific injuries. *See id*. at 25–26. As discussed in Defendant's motion, Plaintiffs' Complaint does not identify the source of their alleged batteries. *See e.g*., Complaint, ECF No. 1 at ¶ 47 (alleging "Urbani was struck in the left foot by impact ammunitions"). Moreover, Plaintiffs concede that federal law enforcement officers were not the only law enforcement officers using crowd control devices and munitions in response to the protests. *See id.* at ¶ 3 (alleging that "Portland Police Bureau officers met these protests with excessive force in the form of generalized violence"). In short, the Complaint lacks any well-pleaded allegations establishing that a federal "law enforcement or investigative officer" caused *Plaintiffs'* alleged injuries. *See* Motion to Dismiss, ECF No. 10 at 22–23 (setting forth numerous examples of Plaintiffs' failure to adequately establish the acts or omissions of federal law enforcement or investigative officers caused their injuries).

Plaintiffs also reference the DHS OIG Report for the undisputed proposition that federal law enforcement officers were deployed to Portland to protect federal property. *See* Opposition, ECF No. 17 at 26. But Plaintiffs do not explain how their reference to the DHS OIG Report

supports a reasonable inference that "federal law enforcement or investigative officers" for purposes of the FTCA's law enforcement proviso caused *Plaintiffs' specific injuries*.

Finally, Plaintiffs argue that Defendant improperly places the burden on Plaintiffs "to plead that each federal officer, independently from others, 'was an investigative or law enforcement officer' within the meaning of the FTCA." *Id.* at 27. Such argument mischaracterizes Defendant's position. Defendant only seeks to hold Plaintiffs to their burden to establish a waiver of sovereign immunity under the FTCA's "law enforcement proviso" through plausible *factual* allegations—not just conclusory, unsupported allegations—that the acts or omissions of federal investigative or law enforcement officers caused their particular injuries. This is not mere semantics—it goes to the heart of this Court's subject matter jurisdiction over Plaintiffs' battery claims. *See* Motion to Dismiss, ECF No. 10 at 23–24 (describing cases). To satisfy their burden, Plaintiffs may not rely upon generalized allegations regarding the conduct of federal employees, which may or may not be investigative or law enforcement officers, or the physical location of federal law enforcement officers at the time of Plaintiffs' claimed injuries, divorced from the harms they allegedly individually suffered. *See id.* at 24 (citing *Smith v. United States,* No. 6:22-00732-MK, 2023 WL 7130303 (D. Or. Oct. 30, 2023)).[9] As such, Plaintiffs have failed to adequately plead a battery claim under the FTCA.

---

[9] For instance, although Plaintiffs argue that they have pled that their injuries were caused by "law enforcement officers: cross-designated federal agents from DHS, ICE, and other federal law enforcement agencies, wearing gas masks, military fatigues, and full protective riot gear," Opposition, ECF No. 17 at 28, they do not cite allegations in the Complaint for this proposition. Nor could they, because nowhere in the Complaint is it alleged that Plaintiffs' specific purported injuries were caused by federal law enforcement officers.

DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS - 15

**B. Except for Plaintiff Maher's Baton Allegation, Plaintiffs Fail to Adequately Plead Intent to Injure.**

Plaintiffs acknowledge that to adequately plead a battery claim, they must allege "not only intent to act, but also intent to injure the Plaintiff." Opposition, ECF No. 17 at 34. Despite this, they argue that this Court should find that they have adequately pled a battery claim. *See id*. That argument is without merit.[10]

Plaintiffs cite several paragraphs in the Complaint whereby they allege federal agents deployed crowd control devices and munitions. *See id.* at 29–30 (citing Complaint, ECF No. 1 at ¶¶ 22-30, 40-44). But nowhere in those paragraphs do Plaintiffs specifically allege that a federal law enforcement officer caused them injury, much less that there was an *intent to injure them*. Rather, at most those paragraphs include allegations that federal agents took various actions in the general vicinity of Plaintiffs and that those actions had the potential to cause harm. But summary allegations that federal agents or employees at various times intended to cause harmful or offensive contact to protestors, unsupported by factual allegations of an intent to injure Plaintiffs, are insufficient under Rule 8 pleading standards. And as explained in Defendant's motion, alleging that a defendant engaged in an intentional act that is merely likely to result in injury to the plaintiff is insufficient to establish a battery claim under Oregon law. Motion to Dismiss, ECF No. 10 at 24–27; *see e.g.*, *Redman v. Morehead*, No. 3:12-cv-11-AC, 2012 WL 1253108, at *3 (D. Or. Apr. 13, 2012) ("[T]he ability of a court to infer subjective intent to cause

---

[10] Contrary to Plaintiffs contentions, Defendant's arguments regarding battery and negligence are not inconsistent. *See* Opposition, ECF No. 17 at 29 n.11. Plaintiffs have failed to adequately plead both claims. Plaintiffs failed to plead facts sufficient to support a claim for negligence because such claims are premised on intentional conduct. Plaintiffs *also* have failed to adequately allege an intent to injure with respect to their own *specific* alleged injuries. As Plaintiffs recognize, *id.* at 34, the intent to act and the intent to injure the plaintiff are distinct requirements for a battery claim.

harm is limited to situations where such intent is the *only* inference that may be drawn from the circumstances.") (emphasis in original).

Furthermore, Plaintiffs cite allegations in the Complaint regarding their purported injuries in an attempt to establish an intent to injure. *See* Opposition, ECF No. 17 at 29–30 (citing Complaint, ECF No. 1. at ¶ 47 (alleging "Urbani was struck in the left foot by 'impact munitions' fired while standing in the protest zone among a group of nonviolent, peaceful protesters," without alleging the source or the source's intent when firing the munitions); ¶ 48 (alleging stun grenades were "fired . . . close to Plaintiff West, which detonated close to him," without alleging the source or the source's intent when firing the stun grenades); ¶ 49 (alleging Plaintiff Maher "was struck in the head by . . . a 'pepper-spray ball'" without alleging the source or the source's intent in deploying it); ¶¶ 47–49 (alleging that each Plaintiff "was exposed to tear gas in the protest zone," without alleging the source or the source's intent when deploying it)). Yet those allegations state only what purportedly *happened to* Plaintiffs. They do not identify the source of Plaintiffs' particular alleged harms, let alone an intent to injure *them*. *See, e.g., Johnson v. United States*, 734 F. App'x 436, 439 (9th Cir. 2018) (affirming dismissal of plaintiff's battery claim because plaintiff "does not allege that any of the unnamed sheriff's deputies intended to harm or offend him").

With the exception of Plaintiff Maher's allegation that she was struck by a baton, Plaintiffs have failed to plead allegations from which the Court could plausibly infer an intent to injure them. Accordingly, Plaintiffs' battery claims should be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, and those stated in Defendant's motion to dismiss, Defendant United States respectfully requests that this Court dismiss Plaintiffs' claims pursuant to Rule 12(b)(1) and Rule 12(b)(6).

DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS - 17

Dated:  July 2, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

NATALIE K. WIGHT
United States Attorney


JAMES G. TOUHEY, JR.
Director, Torts Branch

By:      _/s/ Kristin McGrory_
Kristin McGrory, Maryland Bar No.
0512140251
Trial Attorney
United States Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4206
Facsimile: (202) 616-5200
E-mail:  Kristin.B.McGrory@usdoj.gov

_Counsel for Defendant United States of
America_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 2, 2024, a true and correct copy of the foregoing document was filed with the Court using the Court's CM/ECF system and was served upon each attorney of record via ECF notification.

*/s/ Kristin McGrory*
Kristin McGrory
