IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ELLEN URBANI, NATHANIEL WEST, and ROWAN MAHER, each individually and on behalf of all similarly situated individuals, | Case No.: 3:23-cv-01920-AN |
| Plaintiffs, | |
| v. | OPINION AND ORDER |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiffs Ellen Urbani ("Urbani"), Nathaniel West ("West"), and Rowan Maher ("Maher"), individually and on behalf of all similarly situated individuals, bring this putative class action against defendant United States of America pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Plaintiffs bring claims of negligence and battery based on allegations that defendant's agents harmed them and putative class members by using teargas, munitions, and other crowd-control methods during the July 2020 protests in Portland, Oregon.

Defendant moves to dismiss the case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). After reviewing the parties' filings, the Court finds this matter appropriate for decision without oral argument. Local R. 7-1(d). For the following reasons, defendant's motion is GRANTED in part and DENIED in part.

## LEGAL STANDARDS

### A.    Subject Matter Jurisdiction

Federal courts have limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). "Absent a waiver, sovereign immunity shields the [f]ederal [g]overnment and its agencies from suit" and deprives the court of jurisdiction. *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1995). The

government and its agents may therefore challenge a federal court's subject matter jurisdiction under Rule 12(b)(1) on the basis of sovereign immunity. *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (collecting cases) ("Rule 12(b)(1) is . . . a proper vehicle for invoking sovereign immunity from suit."). A court must presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

A challenge to subject matter jurisdiction "may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "In resolving a 'facial' attack, the court limits its inquiry to the face of the complaint, accepting the plaintiff's allegations as true." *Reedy v. Cloos*, No. 6:15-cv-01613-AC, 2016 WL 3360667, at *1 (D. Or. Apr. 18, 2016) (citing *Safe Air for Everyone*, 373 F.3d at 1039), *report and recommendation adopted*, No. 6:15-CV-01613-AC, 2016 WL 3267212 (D. Or. June 8, 2016). In a factual challenge, "the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Green v. United States*, 630 F.3d 1245, 1248 n.1 (9th Cir. 2011); *Safe Air for Everyone*, 373 F.3d at 1039). "Jurisdictional finding of genuinely disputed facts is inappropriate when 'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

**B.      Failure to State a Claim**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed R. Civ. P. 12(b)(6). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court "must accept as true all factual allegations in the complaint and draw all

2

reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).   "[B]are assertions" that "amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim . . . are conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

"In ruling on a [Rule] 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) (per curiam).   A court may also "consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.*

## BACKGROUND

### A.    General Allegations

Plaintiffs allege that they participated, alongside putative class members, in protesting against police violence outside the Hatfield Courthouse in Portland, Oregon in July 2020.  Compl., ECF [1], ¶ 13.  On July 1, 2020, federal law enforcement officers and agents were deployed in Portland, where they allegedly "engaged in crowd-dispersal operations, deploying tear gas and impact munitions well beyond the immediate surroundings of federal property and with the apparent purpose of quelling lawful protests in support of Black lives rather than protecting federal property," under direction of then-Acting Department of Homeland Security ("DHS") Secretary Chad Wolf ("Wolf") and then-Senior Official Performing the Duties of the DHS Deputy Secretary Kenneth Cuccinelli ("Cuccinelli").  *Id.* ¶¶ 7, 22.  Then-United States Attorney Billy Williams indicated that the "purpose of the deployment was to protect federal property and personnel."  *Id.* ¶ 6.

Plaintiffs allege that "[f]ederal agents repeatedly failed to employ de-escalation strategies or tactics to mitigate violence" and instead "escalated violence on a nightly basis by . . . pursuing protesters, observers, and journalists through the streets blocks beyond federal property while simultaneously firing pepper-spray balls, rubber bullets, and other munitions" and "concealing the pathways for protestors to safely disperse" with tear gas and flashbang devices.  *Id.* ¶ 24.  More specifically, they allege that federal

agents "discharged tear gas, less-lethal munitions, and sonic grenades directed at" plaintiffs and other protestors, who "were exposed to teargas[,]" "shot with sonic grenades and impact munitions," and "beaten and arrested." *Id.* ¶¶ 14-15. Plaintiffs also allege that defendant and its agents obtained surveillance information on plaintiffs and other protesters near the courthouse "from fixed and mobile cameras, cell phone data, drone footage, and other digital media." *Id.* ¶ 45.

On July 22, 2020, "federal agents built a chain-link fence around the Hatfield Courthouse and reinforced it with plywood and concrete blocks[,]" which plaintiffs allege escalated the situation by permitting agents to fire munitions from the fenced-in portion of the courthouse steps. *Id.* ¶ 25.

On July 23, 2020, District Judge Michael H. Simon issued a temporary restraining order in *Index Newspapers, LLC v. City of Portland*, 474 F. Supp. 3d 1113, 1126 (D. Or. 2020). The temporary restraining order "exempt[ed] journalists and legal observers from orders to disperse and restrain[ed] the U.S. Department of Homeland Security and the U.S. Marshals Service from arresting, threatening to arrest, or using physical force directed against any person who they know or reasonably should know is a journalist or legal observer." Compl. ¶ 26. Plaintiffs allege that this implies that federal agents should issue crowd dispersal orders before using crowd-control devices, but that federal agents did not change their behavior and instead used "excessive force" on plaintiffs and class members. *Id.* ¶¶ 26, 28.

Plaintiffs allege that throughout the month of July, between approximately 11:30 p.m. and 1:00 a.m. each night, federal agents "emerged from Hatfield Courthouse and fired tear gas and tossed and launched flashbang grenades into SW Third Street, Lownsdale Park, and SW Fourth Street, sometimes without any prior warning and regardless of whether there were triggering acts of protestor violence, property damage, or threats . . . toward federal agents." *Id.* ¶ 29. The agents, located behind the protective barriers, would then "fire[] pepper balls through and over the fencing at protestors" and then enter the street, "shooting protestors with rubber bullets, pepper-spray balls, and other impact munitions regardless of whether the protesters were engaged in acts of violence, peacefully dispersing or leaving the area, were in retreat, or were moving away from federal property or standing blocks away[.]" *Id.* ¶ 30.

On July 29, 2020, Governor Kate Brown ("Brown") announced that she had reached an

agreement with defendant to withdraw all federal agents from the Portland protests by August 4, 2020. *Id.* ¶ 37. The next day, President Donald Trump announced on Twitter that if Brown couldn't "clear out, and in some cases arrest the Anarchists & Agitators in Portland . . . the Federal Government will do it for her. We will not be leaving until there is safety!" *Id.* ¶ 38. Plaintiffs allege that after this Twitter announcement, the federal agents increased their use of force. *Id.* ¶ 39.

### B.    Individual Allegations

All three named plaintiffs allege that they experienced use of force without any warning or announcement that they were unlawfully assembled, and without any order to disperse. *Id.* ¶ 50.

**Urbani.** Urbani attended the protests on July 24, 2020. *Id.* ¶ 47. She alleges that she was exposed to tear gas which caused "pain, discomfort, mental distress, respiratory distress, temporary blindness, and temporary loss of mobility." *Id.* She was also "struck in the left foot by impact munitions" while standing in the protest zone, which broke her big toe. *Id.* She was additionally "struck by pepper-spray balls in the head and face causing pain and discomfort." *Id.* She alleges that at all times she engaged in lawful and peaceful protest. *Id.*

**West.** West attended the protests on July 21, 22, 24, and 25, 2020. *Id.* ¶ 48. He was exposed to tear gas which, like Urbani, caused "pain, discomfort, mental distress, respiratory distress, temporary blindness, and temporary loss of mobility." *Id.* On July 25, 2020, one or more of defendant's agents allegedly "fired stun grenades close to [West], which detonated close to him, causing hearing loss, pain, and disorientation." *Id.* He alleges that at all times he engaged in lawful and peaceful protest. *Id.*

**Maher.** Maher attended the protests on July 21 through 26 and 29 through 30, 2020. *Id.* ¶ 49. She was exposed to tear gas which too caused her to suffer "pain, discomfort, mental distress, respiratory distress, temporary blindness, and temporary loss of mobility." *Id.* She alleges that on July 22, 2020, around approximately 12:30 to 1:00 a.m., she was beaten with a baton by "a federal agent wearing military camouflage fatigues" while walking away from Lownsdale Square. *Id.* That same night, between 2:00 and 3:00 a.m., she was allegedly struck in the head by a pepper-spray ball munition while standing on SW Main Street between 5th and 6th Avenue. *Id.* She alleges that the munition hit her bike helmet and

remains lodged therein.  *Id.*

**C.    Procedural History and Class Claims**

Plaintiffs filed the complaint on December 19, 2023, alleging claims for negligence and battery on behalf of themselves as individuals and on behalf of a putative class.  Plaintiffs define the putative class as consisting of:

> "[P]eople who, between July 1 and July 30, 2020, lawfully gathered in an area bounded by SW Taylor St. on the north, SW 2nd Ave. on the east, SW Madison St. on the south, and SW 4th Ave. on the west (also referred to herein as 'the protest zone') to protest police violence, who were exposed to teargas or other impact munitions, and who, within two years of the date of injury filed a Form 95 with the United States."

*Id.* ¶ 13.  Plaintiffs believe that "the class includes at least 162 people."  *Id.*  They exclude from the class the following: "[d]efendant, class counsel and their employees; any judge who sits on this case and their judicial staff; and any person who has filed a separate claim against the United States for injuries arising from the protests that occurred in the protest zone during the dates alleged in this action."  *Id.*

Plaintiffs assert the following nine bases for their negligence claim (the "Negligence Bases"):

> "(a)    In using tear gas without lawful justification, for the sole purpose of crowd dispersal, or as a pain compliance tool;
>
> (b)    In shooting pepper-spray balls indiscriminately or directly at lawful protestors, including when those protesters were displaying no violence or resistance, or when their back was turned while attempting to retreat or obey an order to disperse;
>
> (c)    In unreasonably spraying pepper spray for the purpose of inhibiting protestors' ability to see;
>
> (d)    The unreasonably beating of their person with batons, fists, or other weapons;
>
> (e)    In arresting protestors and class members without probable cause to do so;
>
> (f)    In exploding or detonating grenades in close proximity to lawfully protesting individuals absent any justification to rebut force, effect a custodial arrest, or preserve life and safety;
>
> (g)    In using and applying a quantum of force that was grossly disproportionate to [p]laintiffs' mere presence among protesters, journalists, medics, and bystanders in the vicinity of the Hatfield Courthouse;
>
> (h)    In failing to warn of [d]efendant's agents' and employees' intention to use force, even though it was reasonably feasible for them to do so; and
>
> (i)    In failing to train its officers, and in fostering a culture of violence against police accountability, peaceful protesters like [p]laintiffs and members of the class, even though it was reasonably foreseeable that [d]efendant's employees and agents would engage in unreasonable force against protestors, including [p]laintiffs and members of the class."

*Id.* ¶ 52. As to the battery claim, plaintiffs allege that "[d]efendant's agents and employees intended to cause harmful or offensive contact with [p]laintiffs and members of the class, and did in fact cause harmful or offensive contact." *Id.* ¶ 55.

On April 25, 2024, defendant filed the instant motion to dismiss, seeking to dismiss plaintiffs' complaint in its entirety. Def. Mot. to Dismiss ("Def. Mot."), ECF [10].

## DISCUSSION

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant seeks partial dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. Specifically, defendant argues that (1) the negligent training claim, pled under Negligence Basis (i), is barred by sovereign immunity; (2) the negligent arrest and pepper spray claims, pled under Negligence Bases (c) and (e), fail for lack of standing; and (3) the battery claim is barred in its entirety by sovereign immunity.

#### 1.    *Negligent Training Claim*

Sovereign immunity compels dismissal of plaintiff's negligent training claim. Defendant, as well as its agencies and officials, are immune from suit unless defendant waives sovereign immunity. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Pursuant to the Federal Tort Claims Act ("FTCA"), defendant has waived this immunity for certain claims "for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission'" by a federal employee acting within the scope of their employment where a claim would otherwise exist under state law. *Schurg v. United States*, 63 F.4th 826, 831 (9th Cir. 2023) (quoting 28 U.S.C. § 1346(b)(1)). However, this waiver is subject to certain exceptions, including the "discretionary function" exception. 28 U.S.C. § 2680(a). "This exception 'restores the government's immunity in situations where its employees are carrying out governmental or 'regulatory' duties.'" *Blackburn v. United States*, 100 F.3d 1426, 1429 (9th Cir. 1996) (quoting *Faber v. United States*, 56 F.3d 1122, 1124 (9th Cir. 1995)).

Courts apply a two-part test to determine whether the discretionary function exception bars a claim. *Schurg*, 63 F.4th at 831. First, the court considers whether the government's act or omission on

which the claim is based is discretionary, *i.e.*, whether "it involves an element of judgment or choice." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  This step "is not met where 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.'" *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008) (quoting *Berkovitz*, 486 U.S. at 536).  If the act or omission did not involve an element of judgment or choice, there was no discretion, and the discretionary function exception does not apply.  *Id.*  If the act or omission did involve an element of judgment or choice, the court then asks "'whether th[e] judgment is of the kind that the discretionary function exception was designed to shield[.]'"  *Id.* (quoting *Berkovitz*, 486 U.S. at 536-37).  Congress created the discretionary function exception to shield judgments "grounded in social, economic, and political policy." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814 (1984).  This analysis should not focus on the "subjective intent in exercising discretion," but rather, "on the nature of the actions taken and on whether they are susceptible to policy analysis."  *United States v. Gaubert*, 499 U.S. 315, 325 (1991).  If the act or omission was discretionary, "a strong presumption" arises that it was grounded in policy considerations.  *Id.* at 324.  "[A] safety or engineering standard operates to remove discretion under the FTCA when it is embodied in a *specific* and *mandatory* regulation or statute which creates clear duties incumbent upon the governmental actors." *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989) (emphases in original).  A "general statutory duty to promote safety" is "not sufficient" to remove discretion.  *Id.*

      Defendant argues that the negligent training claim must be dismissed for lack of subject matter jurisdiction because it is covered by the discretionary function exception.  Def. Mot. 12 (all references to pagination of memorandum in support).  Defendant asserts that under the first prong of the test, plaintiffs "have not met their burden to facially plead a 'negligent training' theory of liability falling outside the discretionary function exception" because they have not identified any "statute, regulation, or directive circumscribing how federal officials were required to supervise and train [the] federal employees . . . in Portland in July 2020."  *Id.* at 14.

      Plaintiffs assert that the complaint alleges that "relevant Attorney General guidelines"

required that officers complete certain training "prior to exercising authorities under 40 U.S.C. § 1315," the statute that authorized defendant to designate and deploy DHS law enforcement agents. Pls. Resp. Opp'n Def. Mot. ("Pls. Resp."), ECF [17], at 19 (citing Compl. ¶ 24) (all references to pagination of response). However, the complaint does not contain the language plaintiffs quote, and it appears that plaintiffs seek to infer that the complaint sets forth such allegation merely by its citation to a report by the Office of the Inspector General ("OIG") (the "OIG Report"). *See id.* (citing Compl. ¶ 24[1]). Instead, on this point the complaint alleges only that, on "information and belief, all or most of the federal agents deployed to Portland were not adequately trained in the First Amendment rights to assemble and protest, mass demonstrations, crowd control, or riot control." Compl. ¶ 23. Without allegations describing a statute, regulation, or policy that prescribes a specific course of action that was not subject to discretion and that defendant did not take, plaintiffs have not stated a claim over which the Court has subject matter jurisdiction. Accordingly, the claim for negligent training under Negligence Basis (i) is dismissed, with leave to amend to correct the deficiencies.

2.    *Negligent Arrest and Pepper Spray Claims*

At this stage, plaintiffs have sufficiently demonstrated standing to bring their negligent arrest and pepper spray claims under Negligence Bases (c) and (e). To demonstrate standing, "a plaintiff must show (1) [that they have] suffered an '"injury in fact"' that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendant argues the negligent arrest and pepper spray claims should be dismissed because plaintiffs do not allege that they themselves suffered any injuries resulting from the use of pepper spray or that they were arrested at all, and thus, they lack standing to bring those claims. Def. Mot. 18-20. Plaintiffs

---

[1] For clarity, the Court notes that the complaint cites the OIG Report in a footnote located in paragraph twenty-three, not twenty-four, of the complaint.

counter that the issue defendant raises is, in actuality, a question of whether plaintiffs are adequate representatives of the putative class members, and that this question is more appropriately raised at the class certification stage. Pls. Resp. 31-32 & n.13.

Questions of standing and class certification can blur and overlap. *Melendres v. Arpaio*, 784 F.3d 1254, 1261 (9th Cir. 2015) (explaining that the distinction between standing and class certification is not "always easy to discern"). To resolve this tension, the Ninth Circuit has adopted the "class certification approach." *Id.* at 1262. Under this approach, if there is a "disjuncture between the injuries suffered by named and unnamed plaintiffs," the court first addresses whether the named plaintiffs have standing to bring a claim, and then later, at the class certification stage, addresses whether they are adequate representatives. *Id.* at 1261-62 (citation omitted). "Stated differently, '[r]epresentative parties who have a direct and substantial interest have standing; the question whether they may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation.'" *Id.* at 1262 (quoting 7AA Charles Alan Wright et al., Federal Practice & Procedure § 1785.1 (3d ed.)).

Here, plaintiffs allege that the putative class suffered the same kind of injury as those suffered by plaintiffs, *i.e.*, injuries caused by the negligent use of crowd-control devices and force, but with slightly different factual bases. There is no distinct cause of action brought on behalf of putative class members that is not also brought on behalf of the named plaintiffs. Plaintiffs do have standing, individually, to bring negligence claims against defendant based on the conduct of its agents during the July 2020 protests. Because the unnamed putative class members have similar, but not identical, interests, this matter is premature and is appropriately raised at the class certification stage.

3.    *Battery Claim*

The battery claim is not barred by sovereign immunity. While the FTCA typically preserves immunity for intentional torts, Congress has carved out an exception for certain "claims that arise out of the wrongful conduct of law enforcement officers." *Millbrook v. United States*, 569 U.S. 50, 52 (2013). This exception, called the "law enforcement proviso," allows suits for, in relevant part, claims

"'arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, [or] abuse of process'" by "investigative or law enforcement officers." *Id.* (quoting 28 U.S.C. § 1346(h)).   An "'investigative or law enforcement officer'" is "'any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.'" *Id.* (quoting 28 U.S.C. § 1346(h)).

Defendant argues that plaintiffs have not pleaded facts that support the allegation "that their battery claims arise out of the acts or omissions of investigative or law enforcement officers of the United States." Def. Mot. 22.  Defendant notes that plaintiffs allege that they were struck by munitions and exposed to tear gas but do not allege who fired the munitions and tear gas.  *Id.* at 22-23.

Plaintiffs allege that federal agents were employed pursuant to an executive order and enabling statute, under the direction of Wolf and Cuccinelli, with the stated goal of protecting federal property and personnel.  Compl. ¶ 7.  Plaintiffs allege that the agents were deployed to the protests that plaintiffs attended and that the agents used crowd-control methods such as tear gas, less-lethal munitions, pepper-spray balls, and batons on protestors.  *Id.* ¶ 22.  From these allegations, it is plausible to infer that the persons firing munitions, tear gas, and grenades at plaintiffs were the DHS law enforcement officers who plaintiffs allege fired munitions, tear gas, and grenades at the protests they attended.  Plaintiffs' battery claim is therefore cognizable under the FTCA because it is covered by the law enforcement proviso.

**B.     Motion to Dismiss for Failure to State a Claim**

Defendant moves to dismiss this action in its entirety for failure to state a claim under Rule 12(b)(6).  Specifically, defendant argues that (1) the negligent claim must be dismissed in its entirety because it is premised on intentional conduct; (2) the negligence claim based on failure to warn, Negligence Basis (h), fails to meet the pleading standard; and (3) the battery claim must be dismissed for lack of intent.

**1.     *Negligence Claim as Based on Intentional Conduct***

To the extent that plaintiffs' negligence claim is based on intentional conduct, it must be dismissed.  Under Oregon law, a plaintiff alleging negligence must show "that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct

11

in fact caused that kind of harm to the plaintiff." *Sloan v. Providence Health Sys.-Or.*, 364 Or. 635, 643, 437 P.3d 1097 (2019); *see Fazzolari v. Portland Sch. Dist. No. 1J*, 303 Or. 1, 17, 734 P.2d 1326 (1987) (en banc) ("In short, unless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from [the] defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.").

Generally, "intentional conduct . . . cannot support a claim for negligence" under Oregon law. *Wagoner v. City of Portland*, No. 3:14-cv-2063-AC, 2017 WL 2369399, at *11 (D. Or. May 31, 2017) (citing *Kasnick v. Cooke*, 116 Or. App. 580, 583, 842 P.2d 440 (1992)); *see also Kasnick*, 116 Or. App. at 583 ("[P]laintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence.").

Defendant argues that plaintiffs fail to state a claim for negligence as to all the remaining Negligence Bases because the allegations relating to those bases involve intentional use of force and Oregon law does not recognize a tort for intentional negligence. Def. Mot. 6. Defendant asserts that these claims are thus more appropriately brought as battery claims. *Id.* at 7.

Striking someone with a baton, fist, or other weapon is intentional conduct that does not give rise to a negligence claim. *See Pettibone v. Biden*, No. 3:20-cv-1464-YY, 2024 WL 4433038, at *8 (D. Or. Oct. 7, 2024) (citation omitted); *Aranda v. City of McMinnville*, 942 F. Supp. 2d 1096, 1110 (D. Or. 2013). Similarly, arresting and handcuffing a person is intentional conduct that "cannot support a claim for negligence." *Wagoner*, 2017 WL 2369399, at *11. Accordingly, plaintiffs' negligence claim is dismissed to the extent it is premised on beatings under Negligence Basis (d) and arrests under Negligence Basis (e).

The allegations of negligence regarding the use of tear gas, pepper-spray balls, pepper spray, grenades, and generally using force during the protests, however, survive defendant's motion to dismiss. Plaintiffs are permitted to plead in the alternative and may allege claims for both negligence and battery. It is plausible that the listed items were used for crowd control purposes, and not with the intent to

cause harmful or offensive contact, and it is also plausible that they were used with the intent to cause harmful contact. *See Pettibone*, 2024 WL 4433038, at *8 ("Firing projectiles and shooting or hurling tear gas canisters could be done with intent to cause harmful contact or apprehension, or they could be done for general crowd-control purposes, with the striking of and injuries to these plaintiffs the result of negligence."). Accordingly, defendant's motion is denied as to the portions of plaintiffs' negligence claim premised on the use of tear gas under Negligence Bases (a) and (c), shooting pepper-spray balls under Negligence Basis (b), detonating grenades under Negligence Basis (f), using quantum force under Negligence Basis (g), and failing to warn under Negligence Basis (h).

2.    *Negligence Claim Based on Failure to Warn*

Plaintiffs have adequately pleaded a negligence claim based on failure to warn. Defendant argues that plaintiffs have not alleged "any actionable duty to warn under Oregon law by pleading a special status between the parties or pleading facts showing that a failure to warn unreasonably created a foreseeable risk of legally cognizable harm[,]" nor that a failure to warn did in fact cause any harm. Def. Mot. 15. Even if there had been a duty to warn and a harm suffered, defendant asserts that plaintiffs have not adequately pleaded that defendant failed to issue warnings before the alleged uses of force; foreseeability; or causation, because there is no allegation that the alleged failure to warn was a but-for cause of plaintiffs' injuries. *Id.* at 17-18.

Plaintiffs clarify that they do not allege any special relationship. Pl. Resp. 22. Taking into consideration the totality of the complaint, and drawing all inferences in favor of plaintiffs, plaintiffs have stated a plausible claim for negligence under a failure to warn theory. Plaintiffs do allege that the federal agents should have issued crowd-dispersal orders but failed to do so. Compl. ¶¶ 26, 28. It is foreseeable that firing munitions, tear gas, or other crowd-control devices into a peaceful protest that has not been directed to disperse or warned about the potential use of such tools could lead to the kinds of injuries alleged by plaintiffs. Finally, it is reasonable to infer that the alleged failure to warn about the imminent use of crowd-control measures and the failure to direct the protestors to disperse caused the protestors to stay in their location, where they were then struck by munitions, teargas, and other crowd-control devices.

Accordingly, defendant's motion is denied as to the failure to warn basis of plaintiff's negligence claim, under Negligence Basis (h).

       3.     *Battery*

      Plaintiffs have also sufficiently pleaded their battery claim.  A "battery is a voluntary act that is intended to cause the resulting harmful or offensive contact." *Harris v. Pameco Corp.*, 170 Or. App. 164, 169, 12 P.3d 524 (2000) (citation modified).

      Defendant argues that, except for the allegation that a federal agent struck Maher with a baton, plaintiffs fail to allege facts to support the assertion that the federal agents intended to injure them. Def. Mot. 24-26.  Defendant asserts that at most, plaintiffs allege an intention to do an act, such as fire munitions into a crowd, but that they do not allege an intention to make offensive contact with plaintiffs specifically, such as by firing munitions with the intention of striking plaintiffs.  *Id.* at 25.

      As stated above, plaintiffs are permitted to plead in the alternative.  Here, drawing all inferences in favor of plaintiffs, it is plausible that the federal agents intentionally fired munitions, tear gas, and pepper-spray balls at plaintiffs with the intent to cause harmful or offensive contact.  This is supported by the allegations that the federal agents used tear gas and munitions outside of the immediate surroundings of the federal property they were deployed to protect and that the agents had the option to use de-escalation strategies but instead escalated violence.  Accordingly, the Court declines to dismiss the battery claim.

## CONCLUSION

For the reasons stated herein, defendant's Motion to Dismiss, ECF [10], is GRANTED in part and DENIED in part. Any amended complaint must be filed within thirty (30) days of this Opinion and Order.

IT IS SO ORDERED.

DATED this 24th day of September, 2025.

Adrienne Nelson
United States District Judge